Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Mary Mix are presiding. Case number 1-7-0-7-4-4. People vs. Donald Profitt. Thank you. Welcome, counsel. Would each of you please state your name beginning with the appellant and let us know who you're representing. Good afternoon. My name is Ian Jackson on behalf of the defendant appellant Donald Profitt. I am Assistant State's Attorney Brian Hodes on behalf of the state of Illinois. Okay. Welcome to both of you. You have, will have if you want it, 20 minutes each. You don't need to use it, but you're welcome to it. And Mr. Jackson, would you like to reserve some of that for rebuttal? Yes, please. If I could reserve five minutes for rebuttal. Sure. All right. Whenever you are ready. Thank you. May it please the court. Counsel, again, my name is Ian Jackson from the Office of the State Appellant Defender on behalf of the defendant appellant Donald Profitt. There are two issues in this direct appeal and I'm going to devote most of my time to issue one, but I do have a Donald Profitt took two steps back in the direction of the other man who had just accosted Marcus Williams on the sidewalk and for that Profitt was found accountable for attempted robbery and unlawful restraint and he was sentenced to four years in prison. Even in the light most favorable to the state, Williams's testimony along with the crucial surveillance video is insufficient to sustain Profitt's conviction and this court should thus reverse outright the trial court's findings of guilt. So what preceded these two steps? We have a clear picture from the surveillance video as well as Williams's testimony. It's the afternoon and Marcus Williams is walking on the sidewalk talking on his cell phone. He turns left at the corner, finishes his phone call, and puts his phone in his pocket as he continues walking towards where his aunt has parked to pick him up. On the sidewalk Williams walks towards two men whom he does not recognize who are walking in his direction side-by-side. One man is tall and that is who Williams identifies two weeks later as Donald Profitt. The other unidentified man is shorter. As Williams approaches them they are to Williams's left and the shorter man is closer to him. The shorter man physically accosts Williams or grabs him as Williams testified and Williams backs away out of view of the surveillance camera. Williams testified that during this confrontation the shorter man asked Williams what kind of phone he had, demanded it, and slapped it to the ground when Williams presented it. Williams then picked up his phone and ran away. So that's what the shorter man does. What did the taller man, identified as Profitt, do during these few seconds? As the surveillance video shows, very little. And what little he does bespeaks wholly innocent conduct. Let's talk about the surveillance video for a minute. You really can't see that much that clearly. Can you on the surveillance video? You're from a distance. So the part of his conduct that I think the judge focused on that you have not yet focused on is whatever it is he did with his hand under his shirt that led Marcus to believe that he had a gun. So and I have to say that I found that very difficult to see that or whether it happened or I'm missing something. I agree your honor that it's because of the distance in the video it's hard to see any sort of more minor movements if you will. But the important thing about Williams's sort of belief or as he said he assumed his assumption that Donald Profitt may have been armed is that the Profitt was charged with attempted aggravated robbery based on him supposedly indicating to Williams or threatening him as though he were armed with a weapon. And the court found that there was not sufficient evidence of that. So on the video we see Profitt take three additional steps after after the sort of initial confrontation between the other man and Williams. Profitt takes three additional steps. He stops, he turns, he pauses and and then at this point he takes two small steps, two sort of slow steps back towards back towards the other man and Williams who's farther away. And I agree that on the video you can't you can't tell that Profitt is doing anything anything with his hands to indicate that he's that he's trying to facilitate any offenses of the other man's or that he's really doing anything. And that the trial court found there to be insufficient evidence of that for aggravated robbery means that that that's not a fact that can be used then as the would by and large be the sole basis for a finding of attempted robbery here or to prove that he shared the other man's intent. So Williams also testified that Profitt said nothing. Profitt testified to not show or pull a that fact is not enough to to show that Profitt actually shared the other man's intent to commit these offenses. I'm going to go back to this for just a second. Are you saying that the fact that the judge found him not guilty of we can't even consider the possibility as part of the circumstantial evidence because it's clearly circumstantial evidence that whatever it is he did with his hand was indicative of a shared intent even if what he did with his hand was not enough to find beyond a reasonable doubt that he was indicating he had a gun or he was armed? Are you suggesting we have to discount that battery charge? I mean, aggravated attempted robbery, aggravated attempted burglary. Sorry, charge attempted aggravated robbery. That's what it was. Anyway, that's the one. Um, yes, Your Honor, that that is that is my position that the evidence the judge found that there was not. There was not evidence that that happened in such a short amount of time so quickly. Okay, I'm going to push back a little bit. The judge did find Marcus to be very credible and questioned Marcus at length about whatever it was, uh, Mr Profitt had done, and the judge clearly took that into account that conduct, whatever it was, although he found the evidence insufficient to prove an aggravated version of the offense beyond a reasonable doubt. So it doesn't seem consistent to me with what the judge found to completely discount that evidence and act as though it didn't exist. So if that evidence is sort of still, even if not sufficient on its own, even if it's still sort of part of the larger set of considerations, um, there's not enough to show what that actually was. Again, Williamson said he assumed that Profitt was armed. Again, he was alarmed that Profitt was there, but mere presence is not enough. And I think that the nature of Profitt's entire conduct here, um, you know, his two steps, I guess I'll talk a little bit about sort of the nature of those two they're not fast. They're not large steps. They're not aggressive. Uh, he's not raising a fist or pulling out a weapon or again, or, or indicating in any clear way that he has a weapon. He's not yelling or saying anything. He's, he's at least several feet away from Williams with the other man in between. Mr Jackson, does he ever, does he ever pull on the shirt or touch him in any way, the victim? There is no evidence that he ever touches Marcus Williams. Thank you. Yeah. At the point that the other man had crossed him, Profitt keeps walking. And then the two steps back in the direction of the others are, are as close as he gets again to Williams, other than the point at which there's the initial passing. Um, so just another, another comment about the nature of the character of Profitt's steps. I mean, they kind of hardly show an intent to move in that direction, much less demonstrate any intent to suddenly facilitate the commission of a crime that at most he just became aware of. Um, to sustain guilt by accountability here would make walking in public, associating with others, an absolute minefield of criminal liability if one's acquaintance ever suddenly acted out. And it would mark a profound departure from established Illinois law. The other man committed... I'm sorry, go ahead. Finish your thought. Thank you. I was just gonna say the other man committed bad acts here, but, but Profitt himself did not do anything wrong, nor did he fail to do anything that the law requires. Were you able to find another case in which somebody was with the bad actor, as you would call them, before, during, and after the bad act and was not found accountable? Because in the cases you provide, I think somebody was found after, or, or, or I suppose in one of them they were together, but they gave testimony that they had no shared intent. So here we have only the circumstance of them being before, together, before, during, and after. And I'm wondering if there's another case in which somebody is together before, during, and after, and there's no explanation to the contrary, and they were not found accountable. So, um, in the Illinois Supreme Court case, Taylor, um, I believe that the defendant, I'm 100% sure, I believe the defendant did testify in that case. But nonetheless, you know, in that case, the defendant and another man are driving in a car and they get into a minor traffic altercation. And the parties get out the cars and the passenger, the co-defendant, takes out a gun and shoots at the other people. And then the men drive away together. And the driver does not report that offense. And the Illinois Supreme Court held that he was not accountable. The evidence was insufficient to show that he, he shared the other man's intent to commit that offense. And I think that that has a lot of bearing here where no doubt, Mr. Proffitt and the other man were, were together beforehand, and afterwards. And Proffitt was present when the other man was committing the acts he was committing. But there's, there's just a dearth of evidence that he, at first even knew that anything was happening. Then there's very little evidence that he knew exactly what was happening. And once again, there's, there's basically no evidence that he, he did anything to, to facilitate the And likewise, that he shared the other man's intent, shared his intent to commit these offenses. Counsel, was there any substantial step the defendant took toward commission of the robbery? No, Your Honor. I think, Go ahead. I should say that the basis that the trial court, I believe, relied upon was was the two steps. And the trial court also made some, some findings that are frankly, contradicted by the video regard, you know, the trial court commented in making its findings that both Mr. Proffitt and the other man were, they were, quote, out there looking for some sort of trouble. But on these facts, there's really the quintessence of, of attributing guilt by association. There's nothing to suggest that Proffitt and the other man were engaged in other criminal conduct, and thus shared a common criminal design. Nothing to show they made an agreement to jump Williams. And indeed, Proffitt continuing in his original direction before stopping and turning and looking, shows that, again, he didn't, he didn't know what's going to happen. He didn't even necessarily know what was happening once it was underway. So the actual, the bad actor was identified at some point? There's no indication in the record that he was ever identified. I have a, just want to say a couple more things, I guess, about, about Mr. Proffitt's steps. His actions here are really the sort of minimal actions that I would expect to see in a similar situation involving no wrongful conduct by anyone. For example, you're, you're walking along the street with another person, and the other person drops their phone and stops to retrieve it. Or the other person briefly stops to greet a friend in passing. You're not expecting this, you're not part of it, you take a few more steps in your original direction, and then stop and turn to look back. You drift back towards the surprising event, and then it's over, and you resume in your original direction. And that's what Donald Proffitt did here. And what little he did is, is not enough to support reasonable inferences that he shared the other man's criminal intent, or participated in the man's commission of these offenses. You are just about out of time, but I have a question, and I think Justice Connors has a question. My question is, the unlawful restraint finding of guilt is not really before us, is it? Because there was no conviction on that. There was, there was not a final judgment of conviction entered on that, that's correct. Okay, all right. So it merged, yeah, it merged. Justice Connors. The same act. That was my question as well, so continue. Okay, thank you. So just, just to wrap up this issue then, the evidence does not support reasonable inferences of Mr. Proffitt's shared intent. There's not proof beyond a reasonable doubt, and so Mr. Proffitt asks this court reverse outright. And unless the court has further questions on issue one, I'll just make a few comments. Okay, so issue two, Mr. Proffitt, of course, hopes this court does not find it necessary to review it and answer it, but if it does, this issue arises if this court affirms Mr. Proffitt's conviction for attempted, attempted robbery. As the state agrees, Proffitt's sentencing order is incorrect. It shows one conviction for unlawful restraint, but the finding of guilt for that count merged into the more serious class of offense, attempted robbery. So if this court affirms, the minimus should still be correct and to show the correct offense on which the sentence was entered. And the result of this is that Proffitt should no longer be required to register as a murderer or violent offender against youth. That statute holds that a, among many other against a minor, as Marcus Williams was, does require registration, but here his finding of guilt for unlawful restraint was not a conviction, as your, as your honor suggested, because there was no sentence entered upon it. And even if it were to be somehow construed as a conviction, the language of the act still holds that the registration requirement should not apply here. The, the act says that any conviction set aside pursuant to law is not a conviction for purposes of this act. So any so-called conviction for unlawful restraint here is by its one act, one crime merger set aside pursuant to law. And therefore it's not a conviction for purposes of this act. So Mr. Proffitt should not be required to register under that statute. So altogether, again, Mr. Proffitt asks this court to reverse the findings of guilt outright, reverses conviction outright, because he was not accountable for the other man's actions. Alternatively, Mr. Proffitt asks that this court correct the, his minimus and hold that he is not required to register as a violent offender against youth. Thank you, counsel. Thank you. Um, Assistant State's Attorney Brian Hodes on behalf of the people. Um, I just want to make sure people can hear me. We can hear you. Okay. Thank you, Your Honor. The evidence in this case was sufficient to support the trial court's finding the defendant was guilty of attempted robbery. Um, as the court has, uh, your honors have noted, um, he was with, um, his accomplice both before, after, and during the, uh, the act. And he actually participated in it furthermore by the way he handled himself, by the way, by where he held his hands. And by this fact that he took a step, took steps towards the victim while, um, his, um, accomplice was uh, confronting the victim and threatening him. And the trial court properly recognized that the video, um, supported the video from a distance, um, supported the victim's testimony and the victim's testimony was found to be credible. The victim actually demonstrated what he saw defendant doing at one point during this brief, but fatal encounter, um, with, uh, regarding the cell, the cell phone and the victim testified credibly about defendant's involvement in it. And this testimony coupled with video, which corroborates it, albeit from a significant distance shows that the defendant was not merely, um, a bystander. He was an active participant. This, uh, the Taylor case that, uh, counsel has referred to, I think is actually the case where there were the defendant was found not to be culpable for acts of a co-defendant who threw, who got out of a car and threw, um, debris off a highway path that killed people. He had no involvement in that. In this case, uh, and there was testimony that he was not involved. In this case, the testimony, the credible testimony of the victim coupled with the video shows that defendant was intricately involved. He was a larger of the two men. They both stopped the victim, prevented him from getting where he was going. What about the trial court's finding of not guilty on the aggravated version of the offense? What, what do we make of that in terms of the sufficiency of the evidence of his involvement? Since that was his primary involvement, according to the state. What we make from it is that there was insufficient evidence to show that the defendant had a gun, basically. He doesn't have to have a gun. He just has to make the victim think he has a gun. An aggravated version of the offense. He doesn't actually have a gun. That there was insufficient evidence to show that, but that now that, but that doesn't mean that there was insufficient evidence. The defendant wasn't part of the whole thing and wasn't sufficiently menacing towards the victim for purposes of aiding and abetting in this robbery, attempted robbery, excuse me. Um, I mean, he referred to it as giving him the benefit of the doubt of the trial court. That is when he talked about how he didn't want to tag the defendant with the aggravated version of it. Tell me what a substantial step was that this defendant took toward a robbery. Well, he took a literal step towards the victim and he and his accomplice together blocked this person. Um, they acted, I think, in concert as the trial court found based on the victim's testimony. And I believe that in acting in concert, they took, he defendant took a substantial step towards attempting to rob the victim of his iPhone, in this case. Well, the acting in concert, what was the basis for that? Could this have been just two guys walking down the street? One guy decides, I'm going to give this kid some aggravation. What's your phone like? Wax the phone? The other guy maybe didn't know anything about it. Well, the other guy takes two steps towards him. The other guy is there before and after, and I think it's reasonable to infer that they were in it together based on all of that. It's, I mean, I think you're suggesting that there is a reasonable hypothesis of innocence out there, but that's no longer the standard on appeal. The standard is whether the evidence construed in the light most favorable to the prosecution proved defendant guilty. And here it did based primarily on the victim's testimony, which the trial court found to be credible about how these two people came upon him together and what each of them did and how they together acted. It's always a whole of the detention. I would assume it was seconds or, but I don't, I don't have a clock on that. I mean, it certainly wasn't even a minute, was it? No, but I don't think that that's germane for determining whether or not he committed any of the charged offenses, the duration of the detention. Well, I think it would be relevant as to the unlawful restraint. Now, again, as short as it was, this defendant walked ahead at least one or two seconds and then walked back. So his time with the victim was less than the unknown person. Isn't that right? If you divide them that way, that's true, but I don't think you can divide them. They are acting in concert based on the victim's testimony and the trial court's finding based on that testimony. And also my understanding, if we're talking about unlawful restraint is that the case law says that there is no, there is no time factor for the duration of an unlawful restraint. I think we cited something to that effect in our brief, but if we didn't, I apologize. We'd be happy to supplement. And did he actually stand in the way of the victim? They together blocked the victim. I don't know who was in front of whom at what moment, but they were together. And again, as I said, he was, the victim found him to be particularly menacing. He's the larger of the two men. The victim is a young person, a teenager, young teenager. And he was also looked very menacing to the victim based on the way the defendant had his hands positioned. The trial court found that that was insufficient to show the way his hands and his waistband to show that he was threatening that he had a gun for purposes of aggravated robbery. But that doesn't mean that it doesn't have some impact on the victim. I think when you look at the totality of it, that they were acting together. So the trial court got it right here. This isn't just a guilt by association case. These two people came upon an innocent victim as who was leaving. They came upon him together. They stopped him together. They confronted him together. And then after he got away, they left together. They were part and they acted in concert. Therefore, the people would request that with respect to argument one, that this court affirmed defendant's conviction because the evidence was sufficient to support it for attempt robbery. With respect to defendant's second argument, well, first, do you have any further questions about argument one before I pivot? Anyone? At what point do you argue that Proffitt developed the intent before or during the act? I would assume that he acted intentionally when they stopped him. So I guess it would be some either. I mean, the trial court found that it wasn't premeditated, but at the same time that they were out there together and they were acting together and they were intending to do bad things or they were looking for trouble, I believe was the trial court's phrase when finding the defendant guilty. I guess I have one last question, which you probably don't know the answer to. I think Justice Connors referenced this. The other man, the unknown man, was he to your knowledge or do you know or does the record reflect ever charged with anything? The record does not reflect that he was identified or charged in this case, as I know. So I'll move to issue two then. Issue two, we agree that the minimus has to be corrected because of the lesser included effect, because to reflect the trial court's merger. In this case, the trial court explicitly merged the two convictions. However, that doesn't mean under this statute that defendants should not be subject to the registration requirement that was triggered by his unlawful restraint conviction. This statute, the Murder and Violent Offender Against Youth Registration Act, specifically provides that convictions that result from or are connected with the same act or result from offenses committed at the same time shall be counted for purposes of this act as one conviction. Any convictions set aside pursuant to law is not a conviction. Okay, counsel, but it requires a conviction and there is no conviction for unlawful restraint. Everything, all the language you cite is premised on there being a conviction. The first sentence says convictions that are connected. Convictions, right. It says convictions. I think that what it's talking about there, our position is that what it's talking about there directly is the one act, one crime scenario that we have in this case. It talks about that are connected with the same act result from offenses committed at the same time. And it says for purposes of this act, recognizing that in normal circumstances, perhaps the term, they might not be deemed convictions, but that for purposes of this act, they will be deemed convictions. But this act is part of the criminal code that defines a conviction as requiring a sentence. This is not a conviction. I think you're saying that the legislature doesn't know what a conviction is, which could be correct, but we can't fill in for them if they don't use the right word. And the word they use is conviction. And this is not, I think we all agree, it's not a conviction. Let's start with that. Do you agree it's not a conviction that he was not convicted of unlawful restraint? In the sense, I think that they use the, as the defendant admits, the word conviction gets used different ways in different times. His conviction would have was, it was essentially an here's what would have happened if he hadn't been found guilty. I have trouble with this issue, I admit. His conviction would have stood, would stand under this count. So it isn't eliminated for purposes of this act again, if the trial court grants defendant relief under his first argument. In fact, the unlawful restraint conviction wasn't vacated. And that's really what the second sentence speaks to. So I think what they were trying to do here was to anticipate this scenario in these two sentences, whether they successfully did it as clearly as we might like remains to be seen. Does that, is that, I think they might've been trying. Can there be a finding of guilty without a conviction? Well, the statute also talks, well, I mean, yes, I guess. If you're found guilty, he was found guilty of two things. And clearly, I don't think there's any disputes to that. So the question then would be, was he convicted of unlawful restraint if he was just found, if he was found guilty of it, and also a greater offense in this case, clearly. Right, so there was no sentence. That's the final order. The sentencing is what makes it final, right? On a conviction? Yes. But the statute is all over the place on talking about exceptional scenarios for this. It also talks about at one point of the situation where defendant is found not guilty by reason of insanity, but is still subject to the registration environment. So the statute is clearly reaching, trying to extend out to all offenders. That's why it's called offenders, I guess, as opposed to convicted offenders, maybe. And it also talks about the scenario where you have an adjudication of guilt in the statute, later in the statute, adjudication of delinquency and how that would also constitute a triggering conviction under this statute for purposes of registration. So the first sentence here, I think directly speaks to this case. It talks about a situation where a defendant is convicted or found guilty, if you like, of multiple offenses committed at the same time, but they would be treated as one conviction. So in that sense, once it merged, the unlawful restraints still existed for purposes of this statute. It may well be that that's what they were trying to do, but if they wanted to do it right, they would have had to say a finding of guilty that gets merged into another conviction. That's what they would have had to say, correct? And under the rule of leniency, it's not our job to rewrite these statutes when the legislature does it incorrectly, if that's what they're trying to do. I mean, you want us to presume what the legislature's trying to do. You want us to presume what Mr. Profitt was trying to do. You want us to make a lot of presumptions in this case, counsel. Well, I mean, with respect to what the defendant was doing, the trial court made that ruling, and I'm not asking this court to make any presumption with respect to that. With respect to what the legislature did here, I think that they sufficiently did this. I would like to say written more, would more have been clearer perhaps if they'd talked about findings of guilt rather than convictions. But I also think that the second sentence where it says, a conviction set aside pursuant to law is not a conviction for purposes of this act, speaks to this. What that's referring to, set aside is a synonym basically for a vacated conviction. So that's what would not count. This isn't a situation where his conviction was vacated. It was essentially an unsent, what the courts have called an unsentence finding of guilt. And that triggered the registration requirement under the first sentence. Also, and I guess I would want to research this issue and submit something to the court, but I'm not sure that the rule of leniency applies quite the same way with this sort of a registration act that it does for other criminal sanctions. And if the court would like, I'd be happy to submit some additional writing on that. But my research did not do that. Well, if there are no further questions on this, I think that defendant's conviction finding of guilt was intertwined with, it was part of the same act. It resulted from the same act committed at the same time. And therefore, for purposes of this act, his unlawful restraint conviction was one conviction. And therefore, defendant is subject to registration, even though the minimus needs to be corrected. Right. Thank you, counsel. And I appreciate your offer to, we'll issue an order if we think we need any supplemental briefing on that issue. And then we'll let both of you talk about whether the rule of leniency, I don't think either of you briefed that as being part of this argument. I think you both looked at the statutory language as it exists. So we'll let you know if we need that. But thank you for the offer. All right. Any other questions for the state? All right. Let's hear rebuttal. Thank you, counsel. Thank you. So a few points. This court does not need to make any sort of finding that Marcus Williams was not a criminal. At a minimum, the broad outline of his testimony is indeed confirmed by the video. But to the extent there's any lack of clarity from his testimony about the precise timing of events, or where everybody was physically in relation to each other, the surveillance video really does flesh that out. And profits, the state refers to profit being the larger of the two men, and suggest that that is is somehow relevant to more than just Marcus Williams's subjective fear in the situation, but that somehow profit being a larger of the two men is somehow shows that he actually formed the necessary criminal intent to be accountable for the other man's actions. And that's, that is, that is not how accountability law works. The state, as it does in his brief, and frankly, as the trial court did a bit in its own findings, kind of repeatedly says that, you know, profit and the other man, they not only walked and left together, but they, the state sort of combines all of their actions into one. It's just that, you know, there were not two distinct actors here. They were just, they were in concert making sort of conclusive statements about it, that they, they worked together to accomplish the same goal. They block, and the video just, just simply does not show that. One more, one more comment about the trial court's finding that, that profit did not, in fact, indicate to Williams that he was armed. If he's not indicating that he has a weapon to Williams, then there's really not evidence that he's doing anything intentionally menacing to Williams. He may have had a hand in a pocket or, or sort of near his, his midsection. But that's, that's consistent with all manner of completely innocent behaviors. And then just, just one comment about the duration of the incident. It's true that, that for either attempted robbery or, or unlawful restraint, the, how long the incident is, is not in and of itself, you know, an element of the offense. But duration is relevant for profit here having the time to form the intent and act to aid the knew what was going on, or that even once, if he figured out what was going on, that he, that he did share that intent and act accordingly, acts to, to aid the other man. And that's all, that's all I have, unless the court has further questions. And again, we ask this court reverse. Thank you. Any questions from anyone? No, you're saying no, I don't. Oh, Justice Connors has a question. Go ahead. Sorry, Mr. Jackson, does the video show that the defendant stood in the way of the victim or not? It does not. No, thank you. He walks past. And from that point on, he is, he is separated from what is going on between the other man and Marcus Williams. Thank you. All right. Thank you both very much. We will take this matter under advisement and we will issue a decision in due course. Thank you both a lot.